We're especially pleased to have the, I guess this is the seminar crowd that we have here today, and we're pleased that you would participate in the seminar, and we're glad to have you here in the courtroom. For the benefit of those who have not argued here before, you'll be very cognizant of this lighting system, and when that yellow light comes on, that means you've got two minutes to bring your argument to a close at that point, and when the red light comes on, we expect you to bring your argument to a close after you finish your sentence. These arguments are being recorded, so you need to be aware of the fact that they are recorded, and they're available to the public, and so if you don't want to say anything, you might be ashamed of. And that includes the judges as well. And finally, I would mention, rebuttal is for rebuttal only, and we don't expect you to bring up any new issues in rebuttal that have not previously been addressed by either you or your opponent. We call the first case of the day, and that's Burnside v. Calen. And Mr. Chokowski, I don't know whether I got that correctly or not, but it's close enough. Your Honor, Judge Jolly, Judge Higginbotham, Judge Owen, my name is Keith Chokowski, and I'm the attorney for Appellant Jim Calen. May it please the Court. Much of today's discussion and argument deals with the proper pleading standard, particularly in light of qualified immunity. In this case, we argue that Appellant Burnside has not shown an entitlement to relief based on his pleadings, nor has he shown facts that negate qualified immunity. Thirty years ago, this Court, in Elliott v. Perez, identified what has become of him. The history of the law, the way I see the case, and then you can frame your argument along those lines, at least in response to what I'm saying. And that is, they filed a complaint. You didn't even answer the complaint. You simply filed a motion to dismiss on the basis of qualified immunity. And the district court held that the complaint clearly established a constitutional violation that was clearly established in law. And reading the complaint most favorably to the plaintiff, which we have to do, it certainly seems to me that she did. You did not ask the Court for any kind of further explanation of the charges that they had, which you had a right to do under Judge Higginbotham's opinion several years ago. And so you are stuck with that complaint, and that's what you're going to dance with. And the complaint, to me, read most favorably to the plaintiff, establishes a clearly established law. It's based upon clearly established law. The point where I see issues with that, Your Honor, is, first of all, the pleading standards does not require that we file a detailed reply. Twombly and Iqbal has compressed that. Well, I know it doesn't require that you do, but it also is at your expense that you don't. But if we read the pleadings based on the standards that says that he has to provide the underlying facts to show the constitutional deprivation, it is one thing if we're alleging a discharge. There's no doubt that a discharge in every circumstance is going to be a constitutional deprivation if it is done in retaliation for a protected right. But a transfer simply is not. He also alleges termination. The problem with the termination, Your Honor, is he hasn't shown a constitutional right. Well, he does because he ties it well enough in his own complaint to the original exercise of his right to speech. Your Honor, in the pleadings in February 2012, he was transferred allegedly because the PAC supported Sheriff Kalin's opponent. Thirteen months later, without any facts of anything going on, attending rallies, anything at all, indicating that he was involved in the political process at all. Well, if you had filed a request for a more detailed statement of facts and had made some kind of statement yourself in connection with asserting the qualified immunity, that may be the case, but you are tied to that complaint. And if that complaint basically states the claim that he asserted, which I've read it two or three times and it's rather vague, I'll admit that. Your Honor, in Truvia v. Julian, 187 Fed Acts 346, this Court said when you file a motion to dismiss, that triggers the heightened pleading requirement alone. And that's what we did. We have not filed an answer. Those are the exact facts in that particular case. We filed a detailed motion to dismiss explaining in detail why it didn't meet the requirements to state an initial claim and why it did not negate qualified immunity. He filed an amended pleading in response to that, the vague pleading that we have before us. We filed an additional motion to dismiss on both grounds again. They've not been corrected. They weren't corrected in the first instance. The purpose, as the Court knows, of the rule, is to flesh these things out early. And I know that there are the appellee's argument, or excuse me, the appellee's argument is that, well, our heightened pleading standard in this circuit no longer applies given Iqbal and Twombly. To the contrary, I think Iqbal and Twombly is trying to catch up to this Court. Because what the Court did, what our Court has done, what this circuit has done, is looked at the pleading requirements and in our cases said you have to do more than just put somebody on notice. Rule 8 also requires that you show an entitlement to relief. Short and plain statement. Correct. And. That's the index of notice pleading. And that's why we went to Rule 7, which is a vestigial piece of the old common law pleading that the 1938 rules did not force into the notice pleading concept. And that was the mechanism for accommodating the problems of immunity, which are in this type of case. And that means that you may, by your reply, require the plaintiff to file a detailed pleading, which is really an old common law pleading, if you elect to do so. And that's how we accommodated the problems of immunity, which entitles the defendant not to even be forced to defend the case if, in fact, they're immune. And we believe we have done that. I understand that, but I'm just going back to the opening comments of Charlie. My point in my discussion is Twombly specifically said when it was discussing the pleadings with respect to the Sherman Act, look, if he didn't say that there was a conspiracy, he wouldn't have even met the notice requirement. But what they focused on was you had to have supporting facts to show the right of recovery. And that's what we don't have here. We don't have facts to show that the transfer was an adverse action. Why not? I thought our authority clearly said it did not have to involve compensation, but you transferred him at the same pay to a job that clearly was a lesser desired job than the one that he possessed. In CIRNA, this circuit explained, look, yes, transfers can, in some instances, be an adverse action. But you have to have objective facts to show that. We don't have that. It's very similar to Twombly when they said, look, yes, parallel conduct can be an agreement, but you've got to show that it is. Give us some facts. They didn't do it. You have to send off so that one can have it. There is a plausible inference that can be drawn from it. So I think that's really the finer statement of that rule, the Supreme Court's rule. Do we have, just to frame our discussion, our focus should be did your complaint state sufficient detail from which there is a plausible inference that could be drawn drawing those inferences in favor of the plaintiff? I don't think there are. Simply saying that somebody was subject to a transfer, somebody was subject to an assignment they didn't like. I thought it said more than that. I thought that the whole context of this was that he would not support the sheriff in his. Well, the context of it, and that's another thing, is it gets to the nexus whether or not he pled out a cause of action. There's no claim that the sheriff ever knew of the support. There's no claim that the support was ever announced. Instead, it says it was common knowledge. Therefore, the sheriff must have done it in retaliation. With respect to— You don't think it's a plausible inference from that statement that the sheriff running for reelection and one of his people there is running a campaign against him? I think that's more than a plausible inference. I think the sheriff must have known that. Your Honor, I don't believe that that's true. That's an issue of fact eventually, but— Well, if he didn't even know the guy was doing anything against him, it wasn't much of a threat to him, was it? Well, Your Honor, we think the facts will show that there was not an announcement until much later. But the point being is this. These are facts that should be known. We shouldn't be here making these arguments. They should have been pled if they existed. Wait a minute now. What facts does he need to allege other than the sheriff asked for his political support? He refused to support the sheriff. He supported the sheriff's other candidate in the race, and he was thereafter transferred from patrol duty or some duty to a much lesser preferred job of being in the jail. Now, I know that a committed PAC figure is in there somewhere, but that is essentially what you could infer, reasonably infer, from that complaint. Now, what—why don't that state a well-established cause of action? The problem with the well-established cause of action certainly goes to whether or not Sheriff Kalin knew, and the court's already addressed that. But transferred vis-a-vis a transfer itself, and I don't believe that our case law suggesting that I was transferred to a position that was less prestigious is enough. Cerna makes a point. Not less prestigious. I'm sorry? It was not less prestigious. I mean he's going to sit around jail all night. He'd rather be out catching criminals, I guess. Well, the case law is clear that simply because he was moved from a more prestigious position to one considered less prestigious isn't enough, absent other objective facts. But again, what is the reasonable inference that one attaches to a law enforcement officer who is taken off patrol duty, and I guess that's what it was, was it not? Yes, Your Honor. Off patrol. And put into the jail where there's no challenge for him, there's nothing for him to do there, he's not enhancing his career? That's— You're providing all facts that aren't— No, no, no. I'm drawing reasonable inferences. That's to me. I think it's just as reasonable to recognize that jail administration is the only thing— Everything. Everything that's just as reasonable goes to the pleader. That inference goes to the pleader. In that instance, I'm not sure that Quambly agrees with us. What's your best case that says that instead of filing a motion for summary judgment immediately after the complaint was filed, and saying exactly what you said in your motion to dismiss, that you can do what you did in a motion to dismiss as opposed to a motion for summary judgment? I mean, it's clear to me that the statements that they made in the complaint would not withstand summary judgment. But what's your best case that they don't have to—you have to file a motion for summary judgment as opposed to a motion to dismiss? Well, our argument is, and in the jurisprudence for qualified immunity, that shouldn't be where we have to go. What's your best case? I'm not sure I understand the question. If you had filed a motion for summary judgment asserting exactly what you filed in your motion to dismiss, they would have had to come back and respond with factual assertions to withstand summary judgment. At least in my view, had they filed what they filed in their amended complaint in response to your motion for summary judgment, they would lose. So what is your best authority that they should lose at the motion to dismiss stage as opposed to the summary judgment stage? On qualified immunity. On qualified immunity with respect to the transfer, I believe CIRNA in particular. With respect to the discharge, the problem with the discharge is the span of time, and I've briefed a number of cases that— I'm just talking about the procedurally. You're saying CIRNA supports you procedurally. I'm sorry. Procedurally, well, I would go back to Perez in the case of supporting them that we should not have to be going through a motion for summary judgment in order to get the pleadings on which the claim is based. You wouldn't if you would file a request for a more complete statement. Again, Your Honor, I believe that the motion to dismiss did all that. If it did, then we wasted a lot of time 15 years ago in explaining to the bar that this was the mechanism when you had qualified immunity. And the very reason that we did that is to give content and force to the doctrine of qualified immunity. That is so that you didn't—qualified immunity protects the defendant, the public servant, from having to go through not just from liability but from the processes of trial itself and all that goes with that. And so the early termination and early determination that the public figure enjoys qualified immunity is most important to vindicate that substantive right. And hence, notice pleading was not sufficient. And so we provided—we provided a—to vindicate that privilege. If we just stated notice pleading, you could just run off and start taking depositions and go—but wait a minute. So then the response to that was that lay in the rules themselves. We didn't make something up. It was just a provision of the rules that we weren't— And I don't disagree with that. But what Perez did and what the Schulte case did did not change the need to address his initial right of recovery, which still had to be fled in any case. Okay, so the district—you're here on a denial of qualified immunity, right? And that's what gives you a right to come up at this juncture, right? That's correct. All right, and that's part of the reason— And the denial of qualified immunity under ICPAL required to look at the initial pleading. I understand, but what I'm saying is that you have a denial of qualified immunity, and the reason you can even bring that interlocutory appeal up is because the courts have created that right of appeal and vindication of a qualified immunity. It's really a substantive doctrine. Now, by electing to go as you're going, you'd have a denial of immunity. Where are you if you send this case back for trial in terms of immunity? Just as Judge Owen indicated, Your Honor, we'll be filing a motion for summary judgment very quickly. Well, at least you'll know what the facts are. Thank you, Your Honor. We've taken a bit of your time. Do you have any statement that you wanted to make that you didn't get to make? The only thing that I would point out to the court is with respect to the discharge, there's nothing in the pleadings to identify the context, the content, or the form of this recording or the alleged threat. All we know is that there was a threat supposedly made by the sheriff to an employee. What the threat was, how it came about, the circumstances, we don't know. And the court can't evaluate a First Amendment claim on that. Thank you. You saved some time for rebuttals. Now we'll hear from Mr. Gayle. Yes, Your Honor. You know, as I sit here and looking at the briefs, there's a multitude of writing that we've accomplished in this case to get here, but we would think that we were arguing a summary judgment. How many complaints did you file? I'm sorry, Your Honor? How many complaints? Did you file a complaint and then you amended? There were several amendments to begin with, keeping in mind we're here.  That's correct, Your Honor. We had changed some plaintiffs at the beginning. Keep in mind that Sheriff Kalin is being sued individually. He was not initially in the suit. There became some procedural issues in regards to the Monell liability and the question about whether Monell liability even exists because you're talking about an elected official in Texas basically acting on behalf of the county. I don't mean . . . I'm not picking at you because you've amended five times so much as I want to be clear that it's the fifth amended complaint that we're looking at. It is, Your Honor. All right. And Judge Owen points out something. Why don't we see a summary judgment or something of that nature? I think the logical . . . I'm not saying they had to. What's your best case that says, no, you cannot do this on a motion to dismiss, that you must file either a motion for a more definite statement or a motion for summary judgment? Well, I mean, two things I would say. First of all, I did file an objection to the jurisdiction because I don't think that this really comes under the collateral order rule. I'm asking your best case procedurally. I'd probably say shultea. I mean, that's really the basics of Rule 7, which was implemented to give some sort of legs to a defendant who, from the plain and short statement . . . But, I mean, also your complaint. I don't think you can get up and defend the clarity of your complaint. Your complaint could have been much better drafted, in my opinion. And I've been told that sometimes I'm long-winded, but in this complaint, I wasn't long-winded. I was short and to the point. It's very plain. Oh, you were short, but not necessarily to the point, really. I mean, for instance, let's talk about the termination. There's no real allegation in your complaint that the termination resulted from his participation of his First Amendment rights. In fact, you say, and I don't know what you mean, when you put a parenthesis and say presumably . . . He was terminated, presumably, because he broadcast a tape that had been recorded with respect to someone else. And it takes a very liberal reading of your complaint to tie that at all to his First Amendment activity. Well, I mean, of course, unlike the 30-minute shows that we see on TV regarding attorneys, I don't have, at this point, a smoking gun from Sheriff Kalen himself admitting that he terminated him. You didn't need it. You can allege it. You didn't need that. You can allege facts from which one would draw a more certain influence. But anyway, go ahead with your argument. Well, and factually . . . I mean, the only point I'm making is that I don't think you can defend your complaint as a model of clarity. That's all I'm saying. Well, and without conceding, I would state that I think the Rule 7, which the implementation of that, and Sholtea allows a defendant to really bring something to . . . It sounds as if we're arguing that we're arguing two different things here. They're arguing that my response to a Rule 7 request was not sufficient when they didn't request it. When we're just dealing with the issues about the pleading and whether this is a plausible complaint, you have the facts. It apparently is. But you have a sheriff who marches in and tells their employee, basically, you are going to support me, your political association that you're the chairman of, you're going to support me. You don't have a lower pleading standard because it's a sheriff. You have a pleading standard. Look, barely is good enough for your purposes, so I wouldn't really quarrel with it. Well, and . . . Put it in your briefcase and go with it. I think that it's fairly . . . it is definitely plausible. It meets the standards. I don't think there's anything wrong with the pleadings in regards to the case. You know, if I could have been a little more eloquent . . . Well, not that. We don't want eloquence in a motion to dismiss or a complaint. But what I would like to know is how you tie the complaint about his termination into . . . and relate it to his expression of his First Amendment right. Because you say here, plaintiffs . . . you don't say anything about the exercise of First Amendment rights, and you go through the assignment of the demotion, which is clear, that's clear. But then you get over to . . . the plaintiff worked at the jail alongside with another casualty, a Sheriff Kalin's political vendetta. The plaintiff's employment was terminated. And then you say, not because he exercised his constitutional rights, but presumably he was terminated presumably as a result of dissemination of a recording where Sheriff Kalin threatens yet another officer who has since been forced to resign. Close parentheses. At no time were any of the plaintiff's involvement with the PAC or members of the upcoming election associated with him . . . with his employment. In other words, he didn't engage in any kind of political activities on the job. But that's . . . it's hard to connect that to his earlier activities some 11, 12 months earlier. One of the reasons for one of the last amendments was the fact that this termination did not occur before this case was filed. It occurred afterwards. This case was already pending for some time before the termination occurred. And hence, that's why that was added in there once the termination did occur. Well, you could have alleged that in the complaint here, that after this complaint was filed, then it was terminated. Then you connect it to the complaint itself, and that is retaliation. That's a serious error, it seems to me. It's not like the sixth amended complaint. Maybe I will . . . I will sit here and I will concede that maybe it is . . . maybe perhaps not as clear, but I think that based on the fact that this is just . . . you know, in the paragraphs thereafter, we do talk about the discharge. This is a First Amendment retaliation case, either because of the free speech and or the right of association. We think that we pled the facts sufficient enough to show that for a plausible claim that the sheriff took retaliatory measures against his own employees. And I say employees, because there's also a . . . there was another case that was before the Fifth Circuit for the other person that I alleged was the casualty of this, which is very similar issues. You know, looking at this, I mean, you said earlier, don't say anything that's embarrassing. And the only thing embarrassing I think I can say is that I'm not really sure what to say, except that I think that this is a . . . it is clear enough for at least Rule 8 for the pleading requirements in regards to a political retaliation case, while perhaps the choice of wording in regards to the discharge maybe could have been clearer. But I think that the end part, there would be no reason for me to add the fact that he was discharged if it wasn't related to that. And Rule 9 doesn't require me to prove the subjective intent of an individual. I guess I could plead, Sheriff Katelyn did all this to be vindictive, that he did this to retaliate. But the sufficiency of a pleading is much like a bar exam score. As long as you pass, that's all that really counts. You're in court. I hope I did better in law school, but at least if I pass this, I will be happy. We would look forward to summary judgment or what have you. You know, I think one of the reasons why a summary judgment wouldn't be filed is, I mean, coming up with the evidence in regards to being placed at the jail is not going to be a very hard burden. I really don't think that the summary judgment . . . But why didn't you . . . I mean, you had five pleadings here, five amended pleadings. Why didn't you put those facts in your fifth amended complaint? How hard was that? I mean, I suppose that I could have put all the little intricate things . . . I mean, they objected and pointed out specifically what their contention was, didn't they? They filed the motion to dismiss in regards to it. And didn't they say you have not alleged sufficient facts to say that the termination was an adverse employment act? I think what they were talking about in regards to that was the timing issue. And while that may be good fodder for argument or for . . . That's termination, not the transfer. I'm sorry, the transfer. Okay, in regards to the transfer, you know, they did point out that there was not sufficient. They also pointed out there was insufficient facts in other realms. And that there were facts that the court relied upon that were either immaterial and or really had nothing to do with the decision. And I think their statements in that regard were wrong as well. I don't think there was any fact that the court relied upon that was outside the pleadings in making their determination in this case. Well, if the facts are so easy to allege that the transfer did amount to an adverse employment decision, why didn't you put them in the fifth amended complaint? I, as a pleading, I did not think it was necessary to delineate each and every reason why a change from somebody that was a 12-year veteran to jail administration would be necessary in the complaint. In regards to a summary judgment, I am certain that there's going to be a plethora of facts to support that. But I don't find it necessary in regards to meeting the pleading deadline, I mean, the pleading burdens in regards to this case. I don't think that. Well, the burden shifted to you. Once he raised qualified immunity, the burden shifted to you to plead sufficient facts to get around qualified immunity. Do you think you met that burden? Well, I don't think that, you know, truly I don't think the burden shifted if no one even files an answer asserting that, you know, qualified immunity is a defense. It has to be asserted. It has to be pled. It has not been pled in any capacity or form. It's been mentioned as fodder within the paragraphs regarding the motion to dismiss, but there's not even an answer on file that asserts qualified. You're saying that the defendant did not plead qualified immunity as an affirmative defense to this case? Correct. Motion. I mean, when we're talking about . . . Not to file a motion to dismiss based on qualified immunity, is that right? Well, but, you know, if we're truly, if we're trying to look at this logically in a procedural fashion, the first thing in order to levy a self-defense argument is to plead it. Well, give me a case that says you cannot raise qualified immunity in a motion to dismiss. I need your best case that says you cannot do it. I'm not going to be able to find a case that says you cannot do it. It is done quite frequently. It is done quite frequently. That's why I'm struggling here. Where's the case law that says, no, it must be a motion for more definite statement after you've answered or a motion for summary judgment as opposed to saying, in a motion to dismiss, I'm entitled to qualified immunity, shift the burden to you to allege facts, at least facially, that overcome qualified immunity. But we're talking about shifting the burden in regards to proving the defense, but not necessarily what we're here for, which is . . . No, once you raise . . . the law is very clear that once the defendant raises qualified immunity, the burden shifts to the plaintiff to come to at least allege sufficient facts that would, if believed, overcome qualified immunity. I need a case that says he can't do that in a motion to dismiss. I don't believe there is a case that's going to say that. Is there a case that says he can do that in a motion to dismiss? I would suppose . . . well, I'm not sure of a case to quote that says he can do it. It seems to be done quite frequently. In this case, it's not a motion to dismiss based on qualified immunity. I mean a motion for summary judgment based on qualified immunity. This is just merely a motion to dismiss based on the pleadings. And if you're looking at the pleading standards and you're trying to find out, is this a plausible case for political retaliation by a sheriff against his employees? And the answer is yes. If you take the facts of the case and you have a not so . . . we're not talking about a case where there wasn't a not so veiled threat. We're talking about just a blatant threat of requests for support or bad things are going to happen to you. And bad things did. So if they want to file a summary judgment or what have you or even a motion to dismiss based on qualified immunity, but this isn't really a motion to dismiss based on qualified immunity. There was really no analysis by the district court in regards to the application of qualified immunity. There was discussion regarding it being clearly established. As far as First Amendment retaliation is far back in rich hand and otherwise to 1988. So as far as any issues in regards to it being a clearly established right, that was denied. But there was really no application of qualified immunity in regards to the subjective intent element, especially, of Sheriff Kalin. So I'm . . . like I said, I don't think that there's a case out there that's going to say that he can or cannot do that. It seems to be typically done, but we're not here for the purpose of determining a summary judgment motion. We're here to determine the application of Rule 8 and the implications of Twombly and Iqbal. And to those extent, this is a plausible case. You do see the tension. You know, I see a plethora of change in regards to the cases, especially in regards to . . . We've got a long line of cases from Leatherman, starting with Gibson Connelly. We have Senate bills called the Pleading Restoration Act. We have all kinds of things that are on the horizon. But what I really see, and I think that there's been too much drawn from a lot of these cases, is that I don't really see too much of a change in regards to Iqbal and the application by it or Twombly. What you have is, look, does the person have a claim that looking at the facts is plausible or is it something that's just entirely fabricated and just kind of goes out there and alleges conspiracies or failure to supervise without any kind of application whatsoever? And that's not this case. Well, you know, you used to have a judge in the northern and southern district of Mississippi, actually. And this was before Iqbal and the Senate, as he called it. All you've got to say is, he's got money in his jeans and I want it. But that's not the law anymore. You've got to plead a little more than that. Well, I hope my case is more about justice in some form than monetary reparations. But we know what the realistic thing will be at the end of the day. Forgoing monetary reparations here? I am not conceding that point, Your Honor. Okay. No attorneys' fees. It's all about principle, right? Well, we'll leave that for later, if that's okay with you, Your Honor. But, you know, I think that based on the motion to dismiss, and I've reiterated that,  But let me ask you something. Proper case. He could have raised it in a motion. He could have raised qualified immunity in a motion to dismiss. And if he had, then what would your pardon have been? If he had truly raised it and we had really argued qualified immunity, separate and apart from just the pure pleadings, then I think that, at least in my applications, that I would probably treat it as a sort of a shilte response. I would probably treat it, from what I gather, as that it would probably almost become the form of the summary judgment. I don't really think that you're going to be able to resolve anything in regards to the qualified immunity issue without going outside the record. I mean, really, especially with qualified immunity when you have a subjective intent element. And how do you argue a subjective intent element that's not required to be pled except in general? And I think we've more than generally pledged it. And Iqbal and Twomley respond to different phenomena. Iqbal and Twomley respond to the enormous cost of discovery. And the court, the justices, pragmatic realization that, look, this is a ticket to discovery. You get access to the discovery mechanism in a non-trust case. You can gain settlements or whatever. You can run up big, big bills. And you haven't said anything. So it's in that context that the court is requiring, without the rulemaking process itself, that you at least get a plausible inference before you get the ticket to discovery. Now, when you come to Rule 7 here and shilte, it's a different phenomenon, but it's the same overarching principle. That is, because of the call to protect immunity. So we're talking about the same thing. We're trying to address the restrictions upon access and further proceeding. One is further proceeding with discovery. The other is further proceeding against the principle of qualified immunity. Well, in this case, too, you've got an interesting sort of sidebar, which is that you're not dealing with someone that's just working for the county. Sheriff Kalen is, for all intents and purposes, for liability or otherwise, or responsibility for inmates or otherwise. He is the county. If he acts, and if he acts unconstitutionally, then the county acts unconstitutionally. So you don't have the implication with a lot of the Monell issues that you would typically find in regards to these cases. But just on the basis. I'm sorry. I'm sorry. Go ahead. Go ahead. I don't think whether he's the sheriff or not has effects. That's whether you'd have to plead facts. Was the transfer an adverse employment action? And what were the facts that connected temporally a termination a year later? I mean, that doesn't have anything to do with his status as a sheriff. That has to do with just adequate facts, basic elements of your cause of action. I mean, I hate to borrow from an ADA case or something of that nature, but you have a regarded as. And I think in this case, when we look at the pleadings, I think that the sheriff himself did not regard this as a lateral transfer. He regarded this as punishment. He meant it as punishment. He threatened it as punishment. So I think one of the best facts in there is that Sheriff Kalin himself is the one that recognizes that this is an adverse employment action. Okay. Thank you very much. Thank you. Mr. Chief, Chief Zukoski. Thank you. Just a few points. There was quite a bit of discussion in the presentation regarding subjective intent. The argument that I made in my motion and in my brief was not subjective intent issue. The argument was the lack of facts to showing actual knowledge, not subjective intent. The allegations presuppose that Sheriff Kalin was looking for support, just as any politician would. I'd like the support of the PAC. The allegations in the pleadings suggest Sheriff Kalin did not know what the PAC was going to do or had done because he was seeking support. They also allege further that the PAC did not support him. Agreed. But there's no allegation that Sheriff Kalin did that. You can't retaliate against somebody. Well, he says the PAC— Had common knowledge. He would know whether he got a contribution from the PAC or not. But also, the plaintiff goes on to say that he didn't vote for him either. That's not in the pleadings anywhere, Your Honor. I thought it was. I'm sorry. The allegations are that it was common knowledge at that time that the PAC didn't support Sheriff Kalin. And the cases are alleging that common knowledge for a retaliatory act is insufficient. And that was the point of being made there. It was not an argument of subjective intent as far as the reason for the action. I think that our jurisprudence regarding First Amendment retaliation kind of takes away that subjective intent because we have to determine whether or not it was objectively reasonable in light of current law in determining whether or not qualified immunity would apply. The last point, and really I think he made my argument—excuse me, I'm out of time. Go ahead. You want to make that court statement. Go ahead. Is that in order to get the answers, you have to go outside the pleadings. That's why they're deficient. Okay. Thank you, sir.